# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA

| | | |
|---|---|---|
| EZ MART 1, LLC, on behalf of itself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | CIVIL ACTION NO. |
| v. | ) ) | 1:21-cv-02522-MHC |
| COLONIAL PIPELINE COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM IN SUPPORT OF DEFENDANT
## COLONIAL PIPELINE COMPANY'S
## <u>MOTION TO DISMISS</u>

## **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................1

II.   COMPLAINT'S ALLEGATIONS AND RELEVANT
      BACKGROUND ..................................................................................2

      A.   Plaintiff's Allegations in the Complaint .............................................2

      B.   Colonial Pipeline and Federal Regulation of Oil Pipeline Rates
           and Services ....................................................................................3

      C.   Colonial's May 2021 Tariff Filings for a Temporary Embargo ..........6

III.  MOTION TO DISMISS STANDARD AND CHOICE OF LAW ................7

IV.   ARGUMENT...........................................................................................9

      A.   Federal Preemption and the Filed Rate Doctrine Bar All
           Claims ............................................................................................9

           1.   Plaintiff's state law claims are preempted by federal law ........10

           2.   The filed rate doctrine prohibits Plaintiff's claims against
                Colonial because they improperly seek to alter Colonial's
                rights under a tariff, question FERC's judgment, and
                involve the Court in federal pipeline regulation ......................14

                i.    Plaintiff's claims violate the nondiscrimination
                      principle ..........................................................................16

                ii.   Plaintiff's claims violate the nonjusticiability
                      principle ..........................................................................17

      B.   Plaintiff Fails to State a Claim for Negligence and Gross
           Negligence......................................................................................18

           1.   The economic loss rule bars Plaintiff's negligence claims.......19

           2.   Colonial owes no duty to retail gas stations not to shut
                down its pipeline .................................................................20

      C.   Plaintiff Fails to State a Claim for Federal Declaratory
           Judgment ........................................................................................27

V.    CONCLUSION.....................................................................................31

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*,
  96 N.Y.2d 280, 750 N.E.2d 1097 (2001)..............................................................23

*Aikens v. Debow*,
  208 W. Va. 486, 541 S.E.2d 576 (2000) ..............................................................23

*Andrews v. Metro. Water Reclamation Dist. of Greater Chicago*,
  2019 IL 124283, 160 N.E.3d 895 .......................................................................23

*ARCO Alaska, Inc. v. F.E.R.C.*,
  89 F.3d 878 (D.C. Cir. 1996)..............................................................................12

*ARCO Pipe Line Co.*,
  55 FERC ¶ 61,420 (1991).....................................................................................13

*Ark. La. Gas Co. v. Hall*,
  453 U.S. 571 (1981).............................................................................6, 14, 17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................................7, 8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...........................................................................................7, 8

*Bily v. Arthur Young & Co.*,
  3 Cal. 4th 370, 834 P.2d 745 (1992)....................................................................23

*In re Brinker Data Incident Litig.*,
  No. 3:18-CV-686-J-32MCR, 2020 WL 4287270 (M.D. Fla. July
  27, 2020) .....................................................................................................29, 31

*Bryan v. BellSouth Commc'ns, Inc.*,
  377 F.3d 424 (4th Cir. 2004) ..............................................................................17

*Byrd v. English*,
117 Ga. 191, 43 S.E. 419 (1903) ................................................................21, 22

*Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.*,
942 F.3d 1215 (11th Cir. 2019) .........................................................................28

*In re Chicago Flood Litig.*,
176 Ill. 2d 179, 680 N.E.2d 265 (1997)............................................................23

*Colonial Pipeline Co.*,
160 FERC ¶ 61,063 (2017) ..................................................................................4

*Cooke v. BAC Home Loans Servicing*,
LP, No. 1:11-CV-2126-TWT, 2011 WL 4975386 (N.D. Ga. Oct.
18, 2011) ............................................................................................................28

*CSX Transp., Inc. v. Williams*,
278 Ga. 888 (2005) ............................................................................................22

*D.J. Powers Co., Inc. v. Peachtree Playthings, Inc.*,
348 Ga. App. 248, 820 S.E.2d 217 (2018) ........................................................19

*Department of Labor v. McConnell*,
305 Ga. 812, 828 S.E.2d 352 (2019) ................................................................20

*Dundee Cement Co. v. Chemical Laboratories, Inc.*,
712 F.2d 1166 (7th Cir. 1983) ...........................................................................24

*Edebiri v. N. Highland Co., LLC*,
No. 1:20-CV-04087-SDG, 2020 WL 6564852 (N.D. Ga. Nov. 9,
2020) ...................................................................................................................29

*Enbridge Energy, Ltd. P'ship*,
148 FERC ¶ 61,157 (2014)................................................................................13

*Entergy La., Inc. v. La. Pub. Serv. Comm'n*,
539 U.S. 39 (2003)......................................................................................11, 14

*In re Equifax, Inc., Customer Data Sec. Breach Litig.*,
362 F. Supp. 3d 1295 (N.D. Ga. 2019)......................................................8, 9, 27

*Evanns v. AT&T Corp.*,
 229 F.3d 837 (9th Cir. 2000) ...............................................................15

*In re Extraction Oil & Gas*,
 622 B.R. 608 (Bankr. D. Del. 2020)......................................4, 12, 25

*Frontier Pipeline Co. v. FERC*,
 452 F.3d 774 (D.C. Cir. 2006).................................................................6

*George E. Warren LLC v. Colonial Pipeline Co.*,
 503 F. Supp. 3d 239 (D.N.J. 2020)................................................17, 18

*Giles v. SunTrust Mortg. Inc.*,
 No. 1:13-CV-2992-RWS, 2014 WL 2779527 (N.D. Ga. June 19,
 2014) ............................................................................................................28

*La. ex rel. Guste v. M/V TESTBANK*,
 752 F.2d 1019 (5th Cir.1985) (en banc) ...........................................19

*Heath v. ILG Tec*hs.,
 LLC, No. 1:20-CV-3130-TWT, 2020 WL 6889164 (N.D. Ga. Nov.
 24, 2020) ..............................................................................................19, 20

*Hill v. BellSouth Telecomm., Inc.*,
 364 F.3d 1308 (11th Cir. 2004) .................................................14, 15, 16, 17

*Imperial Irrigation Dist. v. Cal. Indep. Sys. Operator Corp.*,
 146 F. Supp. 3d 1217 (S.D. Cal. 2015)..................................................6

*In re Stand 'n Seal, Prods. Liab. Litig.*, No. 1:07-MD-1804-TWT,
 2009 WL 2998003, at *2 (N.D. Ga. Sept. 15, 2009)..........................9

*Irwin v. Jimmy John's Franchise, LLC*,
 175 F. Supp. 3d 1064 (C.D. Ill. 2016) .................................................29

*JPMorgan Chase Bank, N.A. v. Durie*,
 350 Ga. App. 769, 830 S.E.2d 387 (2019) .........................................20

*Keogh v. Chicago & N.W. Ry. Co.*,
 260 U.S. 156 (1922)................................................................................14, 26

*Lincoln v. Fla. Gas Transmission Co. LLC*,
608 F. App'x 721 (11th Cir. 2015) ...................................................24

*Cal. ex rel. Lockyer v. Dynegy, Inc.*,
375 F.3d 831 (9th Cir. 2004) ...........................................................10

*Lotierzo v. Woman's World Med. Ctr., Inc.*,
278 F.3d 1180 (11th Cir. 2002) ..........................................................8

*Lucky Capital Mgmt., LLC v. Miller & Martin PLLC*,
762 F. App'x 719 (11th Cir. 2019) ...................................................20

*McGinley v. Houston*,
361 F.3d 1328 (11th Cir. 2004) ..........................................................8

*Miss. Power & Light Co. v. Miss. ex rel. Moore*,
487 U.S. 354 (1988)...............................................................11, 14

*Mont.-Dakota Utils. Co. v. Nw. Pub. Serv. Co.*,
341 U.S. 246 (1951)......................................................................15

*Murray v. ILG Techs., LLC*,
798 F. App'x 486 (11th Cir. 2020) (*Murray II*) ...................19, 20, 21

*Myrick v. Freuhauf Corp.*,
13 F.3d 1516 (11th Cir. 1994) ..........................................................10

*Nebraska Innkeepers, Inc. v. Pittsburgh-Des Moines Corp.*,
345 N.W.2d 124 (Iowa 1984) ..........................................................23

*Old Dominion Elec. Coop. v. PJM Interconnection, LLC*,
No. 3:19CV233, 2020 WL 1545882 (E.D. Va. Mar. 31, 2020) ........16

*OXY USA, Inc. v. FERC*,
64 F.3d 679 (D.C. Cir. 1995)..............................................................6

*Patel v. Specialized Loan Servicing LLC*,
183 F. Supp. 3d 1238 (S.D. Fla. 2016)..............................................16

*Patel v. Specialized Loan Servicing, LLC*,
904 F.3d 1314 (11th Cir. 2018) ...............................................9, 15, 16

*Patton v. Experian Data Corp.*,
No. SACV1701559JVSDFMX, 2018 WL 6190349 (C.D. Cal. Jan.
23, 2018) ...................................................................................................28

*Pejepscot Indus. Park, Inc., d/b/a Grimmel Indus.-Petition for
Declaratory Ord., Surface Transportation Bd*, No. 33,989, 2003
WL 21108198 (May 9, 2003) ....................................................................13

*Portier v. NEO Tech. Sols.*,
No. 3:17-CV-30111-TSH, 2019 WL 7946103 (D. Mass. Dec. 31,
2019) (D. Mass. Jan. 30, 2020)..................................................................28

*Quiller v. Barclays Am.
/ Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984)..............................9

*Rasnick v. Krishna Hosp., Inc.*,
302 Ga. App. 260 (2010), *aff'd*, 289 Ga. 565 (2011) .........................22

*S. California Gas Leak Cases*, 7 Cal. 5th at 394, 441 P.3d at 883 ..............21, 22, 23

*Square D Co. v. Niagara Frontier Tariff Bureau, Inc.*,
476 U.S. 409 (1986)...........................................................................14, 26

*Stop & Shop Cos., Inc. v. Fisher*,
387 Mass. 889, 444 N.E.2d 368 (1983)...................................................24

*Suncor Energy Mktg. Inc. & Suncor Energy (U.S.A.) Inc.*,
132 FERC ¶ 61,242 (2010) ......................................................................12

*Taylor v. Opteum Fin. Servs., LLC*,
No. 1:18-CV-3896-ELR-JKL, 2018 WL 6726056 (N.D. Ga. Oct.
25, 2018) ...................................................................................................27

*In re: The Home Depot, Inc., Customer Data Sec. Breach Litig.*,
No. 1:14-MD-2583-TWT, 2016 WL 2897520 (N.D. Ga. May 18,
2016) .........................................................................................................30

*Torch Operating Co. v. Babbitt*,
172 F. Supp. 2d 113 (D.D.C. 2001)..........................................................12

*Town of Norwood, Mass. v. New England Power Co.*,
 202 F.3d 408 (1st Cir. 2000) .................................................................18

*Trevathan v. Select Portfolio Servicing, Inc.*,
 142 F. Supp. 3d 1283 (S.D. Fla. 2015) ...............................................16

*Undercofler v. Colonial Pipeline Co.*,
 114 Ga. App. 739, 152 S.E.2d 768 (1966) ...........................................4

*Util. Choice, L.P. v. TXU Corp.*,
 No. CIV.A.H-05-573, 2005 WL 3307524 (S.D. Tex. Dec. 6, 2005) ................18

*Wah Chang v. Duke Energy Trading & Mktg., LLC*,
 507 F.3d 1222 (9th Cir. 2007) ............................................................18

*Wiersum v. U.S. Bank, N.A.*,
 785 F.3d 483 (11th Cir. 2015) ...........................................................14

*Wilferd v. Digital Equity, LLC*,
 No. 1:20-CV-01955-SDG, 2020 WL 6827905 (N.D. Ga. Nov. 20,
 2020) ..............................................................................................28

*Williams Pipe Line Co.*, Opinion No. 154, 21 FERC ¶ 61,260, at
 61,584 (1982) ..................................................................................12

*Willingham*, No. 1:12-CV-01157-RWS, 2013 WL 440702, at *18
 (N.D. Ga. Feb. 5, 2013) ....................................................................27

*Wiltz v. Bayer CropScience, Ltd. P'ship*,
 645 F.3d 690 (5th Cir. 2011) .......................................................19, 24

*World Access USA Corp. v. AT&T Corp.*,
 No. 99-1864-CIV, 2000 WL 297845 (S.D. Fla. Feb. 2, 2000) ...........................6

*Zurich Am. Ins. Co. v. S. Conn. Gas Co.*,
 442 F. Supp. 3d 510 (D. Conn. 2020) ...................................................6

**Statutes**

28 U.S.C. § 2201(a) .............................................................................29

49 U.S.C. app. § 1(15) (1988)................................................................10

49 U.S.C. app. § 6(7) (1988)..................................................................6

49 U.S.C. app. § 13 (1988) ....................................................................6

49 U.S.C. app. § 15 (1988) ....................................................................6

49 U.S.C. § 60502 .................................................................................5

Hepburn Act, Pub. L. No. 59-337, 34 Stat. 584 (1906)..........................5

Interstate Commerce Act, 49 U.S.C. app. § 1 *et seq.* (available at
    https://www.ferc.gov/sites/default/files/2020-06/ica.pdf)...................4

Pub. L. No. 95-473, § 49(c), 92 Stat. 1466-1470 (1978)...........................5

## Other Authorities

18 C.F.R. § 341.0 .................................................................................5

18 C.F.R. § 341.14 ...............................................................................7

18 C.F.R. § 342.1 .................................................................................5

*Comm'n Action to Address Effects of Covid-19 on Oil Pipelines*, 171
    FERC ¶ 61,108 (2020) ...............................................................13, 26

Fed. R. Civ. P. § 12(b)(6)..........................................................1, 7, 8, 9

FERC, Docket No. 1S21-323-000 ..........................................................6

FERC, Docket No. IS21-339-000 ...........................................................7

Restatement (Third) of Torts: Liability for Economic Harm ..............2, 25

# **<u>TABLE OF EXHIBITS</u>**

Exhibit  1 - May 11, 2021 Colonial Pipeline Tariff Filing, FERC, Docket
No. 1S21-323-000.................................................................................6

Exhibit 2 - May 18, 2021 Colonial Pipeline Tariff Filing, FERC, Docket No.
IS21-339-000 ............................................................................7

Defendant Colonial Pipeline Company ("Colonial") moves to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for the reasons explained below.

## I.      <u>INTRODUCTION</u>

Colonial operates a pipeline that transports refined gasoline products.  In May 2021, Colonial was the victim of a sophisticated ransomware attack that led to the shutting down of the pipeline for several days.  Plaintiff is a gas station that claims to have been negatively impacted by the shutdown during that time. Plaintiff concedes it has no relationship with Colonial, yet asserts Colonial is liable to it for purely economic injuries.  Specifically, Plaintiff avers the shutdown purportedly prevented Plaintiff from selling fuel and other convenience store items and caused higher prices which allegedly reduced Plaintiff's profitability.

Plaintiff's claims depend on two related assertions.  First, the Complaint implicitly asserts that Colonial is a public utility supplying a "critical national resource" that is required to keep the pipeline operating at all times.  Second, Plaintiff suggests that this duty runs to ***Plaintiff***.  Both of these assertions are incorrect as a matter of law and doom Plaintiff's claims.  As a matter of federal law, Colonial is not required to keep the pipeline operating.  In fact, federal law expressly permits Colonial to shut down the pipeline for any reason.  Thus, any

state law claim based on this supposed requirement contradicts federal law and is preempted. And even absent preemption, the law is clear that Colonial has no duty to those like Plaintiff who are seeking to recover purely economic losses.

Claims of the type asserted here would have severe negative consequences not just for Colonial, but for all companies and individuals. That is why the Restatement (Third) of Torts provides that there is "no general duty to avoid the unintentional infliction of economic loss on another." *See* Restatement (Third) of Torts: Liability for Economic Harm § 1(1), p.1. Imposing such a duty would threaten "liabilities that are indeterminate and out of proportion to [a defendant's] culpability." *Id.* at § 1, com. c (1), p.3. Because Plaintiff seeks to impose a duty on Colonial that does not exist, and is contrary to federal law, the Complaint should be dismissed in its entirety and with prejudice.

## II.   COMPLAINT'S ALLEGATIONS AND RELEVANT BACKGROUND

### A.   Plaintiff's Allegations in the Complaint

On June 21, 2021, EZ Mart 1, LLC, organized under North Carolina law and located in North Carolina, filed suit against Colonial. ECF No. 1. Plaintiff alleges no substantive federal claims, but rather alleges one state law claim based on negligence and gross negligence.

2

Plaintiff concedes that it does not have any relationship with Colonial.
Rather, Plaintiff is a gas station that sells gasoline, among other products, to retail
end-users.  Compl. ¶ 10.  Plaintiff admits that it purchases the gasoline that it sells
to retail end-users not from Colonial, but rather from another company located in
North Carolina.  *Id.* at ¶ 11.  Plaintiff claims that as a result of the pipeline shutting
down it allegedly suffered purely economic injury from the reduction in the sale of
gasoline and convenience store items and from the increase in the price of gasoline
which allegedly reduced Plaintiff's profitability.  Plaintiff seeks to certify a class of
"[a]ll gas stations that experienced a fuel shortage, an increase in the price paid for
gasoline, or an inability to sell fuel to their customers as a result of the
Ransomware Attack."  Compl. ¶ 91.  Plaintiff requests, among other things, actual
and punitive damages, restitution and disgorgement, injunctive relief, and
attorneys' fees.  Compl., pages 43–44 (paragraphs (D)–(G)).

## B.   Colonial Pipeline and Federal Regulation of Oil Pipeline Rates and Services

Colonial operates the Colonial pipeline, an interstate oil pipeline that
transports refined liquid petroleum products from Texas to New Jersey.  *See*
Compl. ¶ 1.  It is undisputed that Colonial does not sell directly to retail gas
stations like Plaintiff.  *See* Compl. ¶ 11.  Nor does Colonial deliver gas directly to
gas stations.  Rather, Colonial is an interstate "common carrier" pipeline that

transports petroleum products for its customers, referred to in the industry as "shippers," and delivers those products to terminals or other designated shipper delivery points along the pipeline. *See, e.g.*, *Colonial Pipeline Co.*, 160 FERC ¶ 61,063 (2017); *Undercofler v. Colonial Pipeline Co.*, 114 Ga. App. 739, 740, 152 S.E.2d 768, 769 (1966) (identifying Colonial's business as "limited exclusively to the transportation of liquid petroleum products as a common carrier"). At the delivery points, there are a series of other intermediary steps shippers take before the product reaches retail outlets (*e.g.,* finishing the product with ethanol, loading the product on trucks). Colonial is not involved in any of these processes.[1]

As required by the Interstate Commerce Act ("ICA"), 49 U.S.C. app. § 1 *et seq.* (available at https://www.ferc.gov/sites/default/files/2020-06/ica.pdf), and

---

[1] As further background, the oil industry can be broken up into three segments: (i) upstream, (ii) midstream, and (iii) downstream. Upstream activities are mainly "Exploration and Production" activities that focus on locating and extracting hydrocarbons from beneath the Earth's surface. *In re Extraction Oil & Gas*, 622 B.R. 608, 613–14 (Bankr. D. Del. 2020). Common upstream assets include mineral leases, producing wells, and associated production equipment. *Id.* The midstream sector includes the activities involved in gathering, transporting, processing, and storing hydrocarbons. Common midstream assets include pipelines (like the Colonial pipeline), separation facilities, and tankage. *Id.* at 614. The downstream sector is focused on the marketing and distribution of the products derived from the extracted hydrocarbons to the ultimate end users. Common downstream assets include refineries and retail gas stations. *Id.* Plaintiff does not allege that Colonial is part of any upstream or downstream market.

federal regulations, 18 CFR Parts 340–343, Colonial's rates to ship oil are set with the Federal Energy Regulatory Commission ("FERC") via tariffs. The tariffs are filed with FERC in the public record. *See* https://www.ferc.gov/ferc-online/elibrary. Colonial's transactions with shippers thus are governed by the federal tariffs. Colonial does not set downstream market retail prices for gasoline and never even receives title to any of the products it ships on behalf of its shippers. In other words, Colonial does not set the price for the oil it transports via the Colonial pipeline and does not benefit from increases in retail end-user prices. Colonial instead collects fees for the product it transports, so when the Colonial pipeline is not transporting petroleum products, Colonial receives no money.

The rates and services of oil pipelines providing interstate transportation are regulated under the ICA, *see* Hepburn Act, Pub. L. No. 59-337, 34 Stat. 584 (1906), and FERC is charged with specific regulatory oversight over the interstate transportation of oil.[2] All rates—whether initial or changed—for interstate oil transportation service must be filed with FERC. *See* 18 C.F.R. § 341.0; 18 C.F.R. § 342.1. All terms and conditions of such service also must be included in tariffs

---

[2] In 1977, Congress transferred authority over interstate oil pipelines to the newly-created FERC, as successor to the Federal Power Commission. *See* 49 U.S.C. § 60502; *see also* Pub. L. No. 95-473, § 49(c), 92 Stat. 1466-1470 (1978).

that are filed with FERC.  *See* 49 U.S.C. app. §§ 13, 15 (1988).  And the rates

charged cannot differ from the filed rates.  *See* 49 U.S.C. app. § 6(7) (1988);

*Frontier Pipeline Co. v. FERC*, 452 F.3d 774, 788 (D.C. Cir. 2006); *OXY USA,*

*Inc. v. FERC*, 64 F.3d 679, 684 (D.C. Cir. 1995) (a regulated entity cannot "charge

rates other than those properly filed with the appropriate regulatory authority")

(citing *Ark. La. Gas Co. v. Hall,* 453 U.S. 571, 577 (1981)).

## C.    Colonial's May 2021 Tariff Filings for a Temporary Embargo

On May 11, 2021, Colonial submitted its Oil Pipeline Tariff Filing to FERC,

providing notice of a temporary embargo[3] pursuant to the ICA and the Rules and

Regulations of FERC, 18 C.F.R. Part 341.  *See* Ex. 1 (May 11, 2021 Colonial

Pipeline Tariff Filing, FERC, Docket No. 1S21-323-000).[4]  Colonial advised that

---

[3] An "embargo" is simply another way of saying a shutdown of the pipeline.

[4] The Court may take judicial notice of tariffs and consider them in a motion to dismiss.  *See, e.g.*, *World Access USA Corp. v. AT&T Corp.*, No. 99-1864-CIV, 2000 WL 297845, at *2 (S.D. Fla. Feb. 2, 2000) ("A Court may . . . take judicial notice of tariffs not included in or attached to the complaint and consider them in ruling on a Rule 12(b)(6) motion."); *Imperial Irrigation Dist. v. Cal. Indep. Sys. Operator Corp.*, 146 F. Supp. 3d 1217, 1230 (S.D. Cal. 2015) (judicial notice is not [even] required because the tariff is filed with FERC and is therefore "the equivalent of a federal regulation"); *Zurich Am. Ins. Co. v. S. Conn. Gas Co.*, 442 F. Supp. 3d 510, 513 (D. Conn. 2020) (courts may take judicial notice of "tariffs publicly filed with a regulatory authority") (citations omitted).  While the Tariff filing are available in the FERC e-library, Colonial is attaching them as exhibits for the convenience of the Court.

"[t]he Tariffs are being filed to provide notice of a temporary embargo for petroleum product movements affected by certain criminal attacks on Colonial's computer systems. . . .  Colonial requests that the embargo remain in effect until a tariff filing is made cancelling or modifying the embargo." *Id.*

The May 11, 2021 Tariff Filing was accepted for filing by FERC and was not challenged.  One week later, Colonial submitted another Oil Pipeline Tariff Filing to lift the embargo.  *See* Ex. 2, May 18, 2021 Colonial Pipeline Tariff Filing, FERC, Docket No. IS21-339-000.  Colonial stated that it had "resolved the operational disruptions that necessitated imposition of the Embargo and is now prepared to offer all services/movements as described in the Tariffs.  Accordingly, Colonial is filing the Tariffs to remove the Embargo." *Id.*  The May 18, 2021 Tariff Filing was accepted for filing by FERC and was not challenged.  Both requests were automatically granted by operation of law after a 30-day notice period under 18 C.F.R. § 341.14.

### III.   <u>MOTION TO DISMISS STANDARD AND CHOICE OF LAW</u>

**Motion to dismiss standard for Rule 12(b)(6) –** A claim will be dismissed for failure to state a claim upon which relief can be granted under Rule 12(b)(6) if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted).  A claim will survive a motion to dismiss only if the factual allegations in the pleading are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp.*, 550 U.S. at 555. At the Rule 12(b)(6) stage, the court accepts all well-pleaded facts in a plaintiff's complaint as true, as well as all reasonable inferences drawn from those facts. *McGinley v. Houston*, 361 F.3d 1328, 1330 (11th Cir. 2004); *Lotierzo v. Woman's World Med. Ctr., Inc.*, 278 F.3d 1180, 1182 (11th Cir. 2002). However, the court should not accept as true either legal conclusions or legal conclusions couched as factual allegations.  *Iqbal*, 556 U.S. at 678.

**Choice of law –** Because Plaintiff filed suit in Georgia, Georgia's choice-of-law rules apply.  *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1311 (N.D. Ga. 2019).  Plaintiff is a North Carolina LLC located in North Carolina.  Compl. ¶ 9.  Plaintiff also alleges it sustained the alleged—and purely economic—injury in North Carolina.  *See id.* ¶¶ 11, 59–64.  Plaintiff alleges the common law claims of negligence and gross negligence, and the Complaint fails to identify any foreign statute to govern those claims.  Rather, the Complaint includes a "Choice of Law" Section (*id.* ¶¶ 105–116), which contends that "[u]nder Georgia's choice of law principles, . . . the common law of Georgia applies to the claims of all class members."  *Id.* ¶ 116.

The Court should assume that Georgia common law governs the named

Plaintiff's substantive negligence claims for purposes of this motion to dismiss.

*Equifax,* 362 F. Supp. 3d at 1311 ("[T]he application of another jurisdiction's laws

is limited to statutes and decisions construing those statutes.  When no statute is

involved, Georgia courts apply the common law as developed in Georgia rather

than foreign case law."); *In re Stand 'n Seal, Prods. Liab. Litig.*, No. 1:07-MD-

1804-TWT, 2009 WL 2998003, at *2 (N.D. Ga. Sept. 15, 2009) ("If the parties do

not identify any foreign statutes in their pleadings, it is presumed that no foreign

statutes are involved).[5]

## IV.   **ARGUMENT**

### A.   **Federal Preemption and the Filed Rate Doctrine Bar All Claims**

Plaintiff seeks to circumvent FERC's federal regulatory authority over the

operation of the Colonial pipeline through its state law claims.  Both federal

preemption and the filed rate doctrine are independently fatal to Plaintiff's case.[6]

---

[5] The Georgia choice-of-law determination is not a position by Colonial that
Georgia law applies to the entire putative class, which is an issue that must be
resolved with respect to any class certification motion.

[6] *See Quiller v. Barclays Am./ Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir.
1984) (recognizing that the affirmative defense of federal preemption can be the
basis of a Rule 12(b)(6) motion); *Patel v. Specialized Loan Servicing, LLC*, 904
F.3d 1314, 1327 (11th Cir. 2018) (same for the filed-rate doctrine).

### 1.    Plaintiff's state law claims are preempted by federal law

"[I]n the absence of explicit statutory language, state law is pre-empted where it regulates conduct in a field that Congress intended the Federal Government to occupy exclusively. Such an intent may be inferred from a 'scheme of federal regulation . . . so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." *Myrick v. Freuhauf Corp.*, 13 F.3d 1516, 1519 (11th Cir. 1994). State law also is pre-empted "to the extent that it actually conflicts with federal law," or "where it is impossible . . . to comply with both state and federal requirements." *Id.*

FERC maintains exclusive jurisdiction over tariffs—which includes both the oil rates and temporary embargo at issue here. *See* 49 U.S.C. app. § 1(15) (1988) (stating FERC "shall have, and it is given, authority . . . to give directions for . . . embargoes"). Plaintiff's state law claims are preempted by this federal regulatory regime because they are premised on the assertion that Colonial could not engage in an action that is expressly permitted under the tariff – shutting down the pipeline.[7] *See, e.g.*, *Cal. ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 851-52 (9th

---

[7] That Plaintiff's claims are a direct challenge to the five-day embargo is evident from the Complaint. Plaintiff alleges: (1) Colonial had a duty for "the uninterrupted delivery and distribution of fuel to Plaintiff and Class Members" ; (2) "Plaintiff or Class Members . . . retain a vested interest in the Pipeline's uninterrupted operation"; (3) Colonial "halted operations because its billing system

Cir. 2004) (finding FERC's exclusive jurisdiction over federal tariff preempted California's claim that electricity suppliers violated state's unfair business practices law by failing to comply with terms of tariff); *Miss. Power & Light Co. v. Miss. ex rel. Moore*, 487 U.S. 354, 373–77 (1988) (FERC proceedings that required electric utility to purchase a portion of nuclear plant's output at rates determined by FERC to be just and reasonable preempted an inquiry by the Mississippi Public Service Commission into the prudence of management decisions that led to construction and completion of nuclear power plant); *Entergy La., Inc. v. La. Pub. Serv. Comm'n*, 539 U.S. 39, 50 (2003) (federal preemption barred order by Louisiana Public Service Commission that prohibited the utility from including extended reserve shutdown units as available to affiliates and that entitled customers to credit for overpayment of equalization payment).

**Federal law does not require Colonial to provide an uninterrupted flow of petroleum to anyone** – Unlike natural gas pipelines and other entities that are considered public utilities, Colonial is not a public utility under federal law.

---

was compromised, and Defendant was concerned that it would be able to determine how much to bill customers for fuel they received;" and (4) "[o]il and gas products are a critical national resource and Defendant holds an effective monopoly and a bottleneck over that resource. Under the circumstances, Colonial had a duty to maintain the supply of fuel to gas stations, whether it wanted to or not, and suspended pipeline operations to the detriment of Plaintiff and those similarly situated at its peril." Compl. ¶¶ 21, 28, 45, 88.

Colonial is therefore not required to maintain an uninterrupted flow of petroleum products for its shippers, much less for the benefit of retail gasoline stations or consumer end users. *See In re Extraction Oil & Gas*, 622 B.R. 608, 626–27 (Bankr. D. Del. 2020) (noting that for oil pipelines under "the ICA, the 'public interest' encompasses 'just and reasonable pipeline rates and terms' and 'an efficient petroleum market.' In contrast, "for purposes of the Natural Gas Act, the 'public interest' encompasses 'plentiful and ***uninterrupted*** supplies of fuel to the public.'") (emphasis added). As FERC has stated, "Oil pipeline rate regulation is not a consumer-protection measure. It probably was never intended to be. . . . There are no 'consumers' here. The lines are used solely by business enterprises. Hence the clash between shipper and carrier differs fundamentally from the clash between utilities and their customers." *Suncor Energy Mktg. Inc. & Suncor Energy (U.S.A.) Inc.*, 132 FERC ¶ 61,242, 62,399 (2010) (citing *Williams Pipe Line Co.*, Opinion No. 154, 21 FERC ¶ 61,260, at 61,584 (1982)).

**Federal law provides the embargo right** – Colonial's Tariff Filings have the force of federal law, and FERC did not challenge them. *See ARCO Alaska, Inc. v. F.E.R.C.*, 89 F.3d 878, 886 (D.C. Cir. 1996) (filed tariffs have the force of law); *Torch Operating Co. v. Babbitt*, 172 F. Supp. 2d 113, 123 (D.D.C. 2001) ("FERC

need not take any further affirmative action for the tariff to be considered

'approved.'").  Colonial has the absolute right to file a temporary embargo notice:

> An embargo notice is a unilateral declaration by a carrier that it
> temporarily will suspend service over a part of its system.  Typically a
> notice is issued when the carrier temporarily is unable to provide
> service because of damage to the line or some other impediment to
> service.

*Pejepscot Indus. Park, Inc., d/b/a Grimmel Indus.-Petition for Declaratory Ord.,*

*Surface Transportation Bd*, No. 33,989, 2003 WL 21108198, at *8, n.5 (May 9,

2003); *see also Comm'n Action to Address Effects of Covid-19 on Oil Pipelines*,

171 FERC ¶ 61,108, 61,689 (2020) (acknowledging right of oil pipeline to file a

temporary embargo).  Oil pipelines have significant authority to suspend oil

transportation service.  In fact "oil pipelines . . . do not need approval to terminate

or permanently abandon service," which is more severe than the temporary

shutdown at issue here.  *See ARCO Pipe Line Co.*, 55 FERC ¶ 61,420, 62,263

(1991); *see also Enbridge Energy, Ltd. P'ship*, 148 FERC ¶ 61,157, 61,796 (2014)

("Under the ICA, oil pipelines do not need abandonment authorization and can

cancel service by simply filing a tariff.").

   The premise underlying Plaintiff's claims in this case – that Colonial "had a

duty . . . to ensure the continued and uninterrupted operation of the Pipeline" – is

violently at odds with well-settled federal pipeline law and would create a state law

duty that conflicts with the federal regulatory scheme.  As the Supreme Court has held, "'the rights as defined by the tariff cannot be varied or enlarged by either contract or tort of the carrier. . . .  And they are not affected by the tort of a third party.'"  *Square D Co. v. Niagara Frontier Tariff Bureau, Inc.*, 476 U.S. 409, 416–17 (1986) (quoting *Keogh v. Chicago & N.W. Ry. Co.*, 260 U.S. 156, 163 (1922)).  To grant relief on Plaintiff's state law claims, the Court would have to find Colonial could not do under state law what it is expressly permitted to do under federal law.  That is the paradigmatic case for federal preemption.  *See, e.g.*, *Miss. Power & Light Co. v. Miss. ex rel. Moore*, 487 U.S. 354, 373-77 (1988); *Entergy La., Inc. v. La/ Pub. Serv. Comm'n*, 539 U.S. 39, 50 (2003)*; Wiersum v. U.S. Bank, N.A.*, 785 F.3d 483, 486 (11th Cir. 2015) (conflict preemption barred state law claim that was in irreconcilable conflict with federal law).   Preemption alone requires dismissal.

2. **The filed rate doctrine prohibits Plaintiff's claims against Colonial because they improperly seek to alter Colonial's rights under a tariff, question FERC's judgment, and involve the Court in federal pipeline regulation**

The filed rate doctrine (also known as the "filed tariff doctrine") "forbids a regulated entity to charge rates for its services other than those properly filed with the appropriate federal regulatory authority."  *Hill v. BellSouth Telecomm., Inc.*, 364 F.3d 1308, 1315 (11th Cir. 2004) (citing *Ark. La.*, 453 U.S. at 577).  As a

result, "[w]here the legislature has conferred power upon an administrative agency to determine the reasonableness of a rate, the rate-payer 'can claim no rate as a legal right that is other than the filed rate.'" *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018) (quoting *Mont.-Dakota Utils. Co. v. Nw. Pub. Serv. Co.*, 341 U.S. 246, 251 (1951)).  The doctrine applies to the terms of the tariff as well as the rates charged.  *See Hill*, 364 F.3d at 1315 ("causes of action in which the plaintiff attempts to challenge the terms of a filed tariff are barred by the filed rate doctrine") (citing *Evanns v. AT&T Corp.,* 229 F.3d 837, 840 (9th Cir. 2000) ("Not only is a carrier forbidden from charging rates other than as set out in its filed tariff, but customers . . . may not bring an action against a carrier that would invalidate, alter or add to the terms of the filed tariff.")).  The filed-rate doctrine's applicability is not limited to plaintiffs who are rate-payers (here, shippers).  It bars any suit, even actions by third parties, challenging the rate-making authority of the regulatory body.  *See Patel*, 904 F.3d at 1322.

Two principles underlie the filed rate doctrine:  (1) nondiscrimination— "preventing carriers from engaging in price discrimination as between ratepayers" and (2) nonjusticiability—"preserving the exclusive role of federal agencies in approving rates for . . . services that are 'reasonable' by keeping courts out of the rate-making process, a function that the federal regulatory agencies are more

competent to perform." *Hill*, 364 F.3d at 1316 (citations omitted).  Plaintiff cannot bring a cause of action when either principle is implicated, *see id.*, and here, Plaintiff's claims violate both.

### i.   Plaintiff's claims violate the nondiscrimination principle

The nondiscrimination principle holds that "litigation should not become a means for certain ratepayers to obtain preferential rates."  *Patel v. Specialized Loan Servicing LLC*, 183 F. Supp. 3d 1238, 1242 (S.D. Fla. 2016), *aff'd,* 904 F.3d 1314 (11th Cir. 2018).  If Plaintiff recovered the damages sought, it would operate to give Plaintiff more favorable treatment than other purchasers.  *See id.* at 1243 ("The claims also offended the nondiscrimination principle because any damages recovered by the plaintiffs would operate like a rebate to give them a preference over other borrowers") (citations omitted); *see also Trevathan v. Select Portfolio Servicing, Inc.*, 142 F. Supp. 3d 1283, 1287 (S.D. Fla. 2015) ("Under the nondiscrimination principle, a claim is barred if an award of damages to the plaintiff would result in judicial [determination of] reasonableness of the rate even if the claim does not directly attack the filed rate.").  Plaintiff's claims for damages and disgorgement, if successful, would have the indirect effect of changing the lawful rate received by Colonial in the federal tariffs.  *See Old Dominion Elec. Coop. v. PJM Interconnection, LLC*, No. 3:19CV233, 2020 WL 1545882, at *12

16

(E.D. Va. Mar. 31, 2020) (seeking damages related to rates under tariffs, even if not in direct challenge to those rates, is prohibited by the filed-rate doctrine). *Bryan v. BellSouth Commc'ns, Inc.*, 377 F.3d 424, 429–30 (4th Cir. 2004) (same). Plaintiff's claims thus violate the nondiscrimination principle.

### ii.    Plaintiff's claims violate the nonjusticiability principle

The nonjusticiability principle's purpose is to preserve FERC's primacy over determining the reasonableness of rates charged by regulated interstate common carrier pipelines like Colonial. *See Hill*, 364 F.3d at 1317 (citing *Ark. La.*, 453 U.S. at 577–78). This principle "prevents more than judicial rate-setting; it precludes any judicial action which undermines agency rate-making authority. . . . Thus, even if a claim does not directly attack the filed rate, an award of damages to the customer that would, in effect, result in a judicial determination of the reasonableness of that rate is prohibited under the filed rate doctrine." *Id.* (citations omitted). In *George E. Warren LLC v. Colonial Pipeline Co.*, 503 F. Supp. 3d 239, 251 (D.N.J. 2020), the court found that plaintiff, by seeking a judgment that Colonial's gasoline blending practices violated the law, was effectively and impermissibly seeking an enlargement of a tariff that Colonial filed with FERC. The court rejected this attempt as squarely prohibited by the filed-rate doctrine. *See id.*

17

So too here, Plaintiff's lawsuit seeks to undermine rates, tariffs, and embargoes filed with—and accepted by—FERC.  To allow Plaintiff's state law claims to proceed would require the court to second guess Colonial's tariffs and FERC, which is exactly what the filed-rate doctrine prohibits.  *See George E. Warren LLC*, 503 F. Supp. 3d at 251; *Wah Chang v. Duke Energy Trading & Mktg., LLC*, 507 F.3d 1222, 1225–26 (9th Cir. 2007) ("The filed rate doctrine's fortification against direct attack is impenetrable. . . .").[8]  As such, the Complaint should be dismissed in its entirety for the additional reason that its claims are barred by the filed rate doctrine.

**B.    Plaintiff Fails to State a Claim for Negligence and Gross Negligence[9]**

Plaintiff's negligence and gross negligence claims should be dismissed for two independent but related reasons.  First, Georgia's economic loss rule bars such claims.  Second, Colonial owes no duty in tort to this Plaintiff.

---

[8] The filed rate doctrine also bars Plaintiff's claims for declaratory and injunctive relief.  *See Util. Choice, L.P. v. TXU Corp.*, No. CIV.A.H-05-573, 2005 WL 3307524, at *6 (S.D. Tex. Dec. 6, 2005) (dismissing claims for equitable relief where "equitable relief cannot be separated from acts affecting the rates Defendants' charge for energy"); *Town of Norwood, Mass. v. New England Power Co.*, 202 F.3d 408, 419 (1st Cir. 2000) (declaratory and injunctive relief claims barred under filed rate doctrine when claims would contemplate "relief that would block or nullify the termination charge").

[9] For the reasons stated above, all claims should be dismissed based on federal preemption and/or the filed rate doctrine.  However, Plaintiff's state law

### 1.    The economic loss rule bars Plaintiff's negligence claims

Traditionally, "[t]he economic loss rule limits the ability of individuals to recover in tort for negligence where the duty breached arises solely out of a contract." *Murray v. ILG Techs., LLC*, 798 F. App'x 486, 490 (11th Cir. 2020) (*Murray II*) (interpreting Georgia law).  In Georgia, the doctrine bars "recovery in all negligence-based tort actions where a plaintiff seeks to recover purely economic losses, regardless of contractual privity."  *Murray* II, 798 F. App'x at 490 (rejecting economic injury claims arising out of contract even when the plaintiffs were not parties or privies to the contract).[10]  *See also Heath v. ILG Tec*hs., LLC, No. 1:20-CV-3130-TWT, 2020 WL 6889164, at *11 (N.D. Ga. Nov. 24, 2020) (relying on *Murray II* dismissing negligence claim under Georgia's economic loss rule); *Wiltz v. Bayer CropScience, Ltd. P'ship*, 645 F.3d 690, 692 (5th Cir. 2011) ("'Courts applying the tort law of Texas, Georgia, Florida, Alabama, Mississippi and Louisiana have consistently denied recovery for economic losses negligently inflicted where there was no physical damage to a proprietary interest.'" (quoting *La. ex rel. Guste v. M/V TESTBANK*, 752 F.2d 1019, 1027 (5th Cir.1985) (en

---

claims also fail for reasons unique to those claims.  Colonial presents those arguments as alternatives to its preemption and filed rate arguments.

[10] Georgia's economic loss rule also bars claims of gross negligence.  *D.J. Powers Co., Inc. v. Peachtree Playthings, Inc.*, 348 Ga. App. 248, 255, 820 S.E.2d 217, 223 (2018) ) (applying rule to reject "tort claim of gross negligence").

banc)).  There can be no dispute that Plaintiff here seeks only economic losses.

Accordingly, its negligence claims must be dismissed.

### 2. Colonial owes no duty to retail gas stations not to shut down its pipeline

"[T]he threshold issue in a negligence action is whether and to what extent
`the defendant owes a legal duty to the plaintiff.  A legal duty sufficient to support
liability in negligence is either a duty imposed by a valid statutory enactment of the
legislature or a duty imposed by a recognized common law principle declared in
the reported decisions of our appellate courts."  *Heath*, 2020 WL 6889164, at *10
(quoting *JPMorgan Chase Bank, N.A. v. Durie*, 350 Ga. App. 769, 772, 830 S.E.2d
387 (2019)).  "'[T]he existence of a legal duty is a question of law for the court.'"
*Heath*, 2020 WL 6889164, at *10 (quoting *Lucky Capital Mgmt., LLC v. Miller &
Martin PLLC*, 762 F. App'x 719, 725 (11th Cir. 2019)).  "A motion to dismiss
should be granted when a plaintiff fails to allege any cognizable statutory or
common law duty."  *Heath*, 2020 WL 6889164, at *10.

Georgia law recognizes that Colonial does not have a "general legal duty" to
all the world.  In fact, the Eleventh Circuit, Supreme Court of Georgia, and this
Court uniformly recognize that "Georgia law disapproves of such 'a general legal
duty.'"  *Heath*, 2020 WL 6889164, at *10 (citing *Department of Labor v.
McConnell*, 305 Ga. 812, 816, 828 S.E.2d 352 (2019) and *Murray II*, 798 F. App'x

at 491).  *See also Murray II*, 798 F. App'x at 491 (rejecting existence of a duty when "[t]he only affirmative duty the [plaintiffs] identify on appeal is the 'general duty to all the world not to subject them to an unreasonable risk of harm'").

The fundamental problem with the Complaint is that it alleges the very general duty to the world to protect against economic loss that Georgia law forbids. According to Plaintiff, any purportedly negligent action by Colonial – not just related to cybersecurity – would open Colonial up to inappropriate lawsuits from anyone claiming to be injured.  The negative, ripple-effect consequences of such a rule law would have negative consequences extending well beyond Colonial.[11]

Not surprisingly, this is not the law in Georgia.  In *Byrd v. English*, the Supreme Court of Georgia denied recovery to a customer of Georgia Electric Light Company who lost power when the defendants damaged power conduits on a non-party property.  In affirming dismissal, the Court addressed the absurdity of creating liability for such economic ripple effects:

---

[11] As just one example given by a court that rejected such a duty, imagine a traffic accident that forced the closure of a bridge or tunnel.  *S. Cal. Gas Leak Cases*, 7 Cal. 5th 391, 441 P.3d 881 (2019).  The court asked whether the individual who negligently caused the accident would be liable to anyone who suffered purely economic losses from the closure.  *Id.* at 402, 441 P.3d at 888.  Based on concerns about limitless liability and unending litigation, as well as on long-standing legal consensus, the court considered that prospect "doubtful."  *Id.* at 402-03, 441 P.3d at 888.

> If the plaintiff can recover of these defendants upon this cause of action, then a customer of his, who was injured by the delay occasioned by the stopping of his work, could also recover from them, and one who had been damaged through his delay could in turn hold them liable, and so on without limit to the number of persons who might recover on account of the injury done to the property of the company owning the conduits.  To state such a proposition is to demonstrate its absurdity.

117 Ga. 191, 43 S.E. 419, 420 (1903).[12]

The principles articulated by the Georgia courts have been widely adopted. For example, the Supreme Court of California recently ruled in a case involving a natural gas leak on the question whether "local businesses — none of which allege they suffered personal injury or property damage — may recover in negligence for income lost because of the leak." *S. California Gas Leak Cases*, 7 Cal. 5th at 394, 441 P.3d at 883.  The court found that deciding that question "turns on whether the entity that allegedly caused the leak had a tort duty to guard against what we and other courts have termed "purely economic losses," the very question presented by Colonial's motion here. *Id.*, 441 P.3d at 883.  The court held, consistent with the

---

[12] Foreseeability is not the test for duty.  *See, e.g.*, *CSX Transp., Inc. v. Williams*, 278 Ga. 888, 890 (2005) (noting "mere foreseeability" is not a basis for extending a duty of care); *Rasnick v. Krishna Hosp., Inc.*, 302 Ga. App. 260, 264 (2010), *aff'd*, 289 Ga. 565 (2011) ("[The Georgia] Supreme Court has rejected the argument that 'mere foreseeability' served as a basis to extend common law tort duty.").  Thus, even if Plaintiff's alleged injuries were foreseeable, it still cannot state a tort claim.

great weight of authority and the Restatement (Third) of Torts, that there is "no tort duty to guard against purely economic losses." *Id.* at 398, 441 P.3d at 885. *See also Bily v. Arthur Young & Co.*, 3 Cal. 4th 370, 416, 834 P.2d 745 (1992), as modified (Nov. 12, 1992) (rejecting "foreseeability" as a test for duty because of the need to set meaningful limitations on tort; holding that auditor had no tort duty to prevent economic loss to anyone other than the client); *532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 96 N.Y.2d 280, 289–92, 750 N.E.2d 1097, 1102–03 (2001) (rejecting claims for economic loss to those economically, as opposed to physically, injured from a building collapse; the court held this limitation provided "a principled basis for reasonably apportioning liability" that was necessary to prevent potentially crushing liability to "an indeterminate group in the affected areas" who could prove "financial losses directly traceable to the" collapse and noting this was what "historically courts ha[d] done" with similar negligence claims); *In re Chicago Flood Litig.*, 176 Ill. 2d 179, 198, 680 N.E.2d 265, 274 (1997) (same), holding modified by *Andrews v. Metro. Water Reclamation Dist. of Greater Chicago*, 2019 IL 124283, 160 N.E.3d 895; *Nebraska Innkeepers, Inc. v. Pittsburgh-Des Moines Corp.*, 345 N.W.2d 124, 128 (Iowa 1984) (same); *Aikens v. Debow*, 208 W. Va. 486, 501, 541 S.E.2d 576, 591 (2000) (same and noting the endless "ripple effects of a negligence claim based

upon pure economic loss"); *Stop & Shop Cos., Inc. v. Fisher*, 387 Mass. 889, 893–94, 444 N.E.2d 368, 371 (1983) (holding purely economic damages not recoverable in the absence of personal injury or property damage); *Dundee Cement Co. v. Chemical Laboratories, Inc.,* 712 F.2d 1166, 1172 (7th Cir. 1983) (allowing recovery in negligence for purely economic losses may unleash "multiversant possibilities" for litigation that "are staggering to the imagination"); *Lincoln v. Fla. Gas Transmission Co. LLC*, 608 F. App'x 721, 723 (11th Cir. 2015) (interpreting Florida law and holding that "[a]s to negligence, [plaintiff] failed to allege any facts giving rise to a duty on the part of [a pipeline company] to protect him from . . . property value loss, even if we assume the truth of his allegations that Florida Gas is in violation of state and federal safety statutes"); *Wiltz v. Bayer CropScience, Ltd. P'ship*, 645 F.3d 690, 692 (5th Cir. 2011) (crawfish purchasers unable to purchase their supply of crawfish may have had reasonable expectations that they would be able to buy the crawfish, but they did not have an actual, enforceable right to buy them and thus, plaintiff's purely economic loss was too attenuated to support a cause of action in tort).

Indeed, this principle is so ingrained in the law that it has been expressly adopted in the Restatement (Third) of Torts, which provides that "[a]n actor has no general duty to avoid the unintentional infliction of economic loss on another."

24

*See* Restatement (Third) of Torts: Liability for Economic Harm § 1(1), p.1.  The

rationale is explained as follows:

> Economic losses proliferate more easily than losses of other kinds.
> Physical forces that cause injury ordinarily spend themselves in
> predictable ways; their exact courses may be hard to predict, but their
> lifespan and power to harm are limited.  A badly driven car threatens
> physical harm only to others nearby.  Economic harm is not self-
> limiting in this way.  A single negligent utterance can cause economic
> loss to thousands of people who rely on it, those losses may produce
> additional losses to those who were relying on the first round of
> victims, and so on.  Consequences of this sort may be at least
> generally foreseeable to the person who commits the negligent act.
> Defendants in such cases thus might face liabilities that are
> indeterminate and out of proportion to their culpability.  Those
> liabilities may in turn create an exaggerated pressure to avoid an
> activity altogether.

*Id.* at § 1, com. c (1), p.3.

Plaintiff seeks to overcome its duty problem in two ways.  First, it impliedly

claims that Colonial has a duty to it because Colonial is akin to a public utility

supplying a "critical national resource" that is legally required to keep the pipeline

running "whether it wanted to or not."  Compl. ¶ 88.  Whether such an allegation

would be sufficient to sustain a negligence claim is irrelevant because, as explained

above, *see* pp. 11–12, *supra*, Colonial is indisputably not a public utility.  Nor is

Colonial required to maintain an uninterrupted flow of petroleum products even to

its shippers, much less for the benefit of retail gas stations or ultimate end users.

*See In re Extraction Oil & Gas*, 622 B.R. 608, 626–27 (Bankr. D. Del. 2020)

(contrasting the diverging public interests served by natural gas pipelines and oil pipelines and noting that natural gas pipelines—and *not* oil pipelines—have a public interest goal of providing "plentiful and uninterrupted supplies of fuel to the public").  Therefore, Plaintiff cannot bootstrap a duty onto Colonial from its legally incorrect "critical resource" assertion.

Moreover, as also explained above, Colonial has the right under federal law to temporarily embargo pipeline service via tariff filings that have the force of law. *Comm'n Action to Address Effects of Covid-19 on Oil Pipelines*, 171 FERC ¶ 61,108, 61,689 (2020).  This right cannot be varied even by the "'tort of the carrier. . . . And [it is] not affected by the tort of a third party.'"  *Square D Co. v. Niagara Frontier Tariff Bureau, Inc.*, 476 U.S. 409, 416–17 (quoting *Keogh v. Chicago & N.W. Ry. Co.*, 260 U.S. 156, 163 (1922)).  Imposing a tort duty on Colonial to ensure that Plaintiff has an uninterrupted supply of retail gasoline based on its status as a pipeline would be a right that does not exist in the federal tariff filings, a right that does not exist under federal law, a right that FERC did not recognize as it did not challenge the embargo, and a right that no other authority has recognized.

Second, the Complaint also alleges that Colonial was under a "special and independent duty to take reasonable measures to ensure the continued and uninterrupted supply of fuel to the gas stations that relied on such supply."  Compl.

¶ 89.  To the extent Plaintiff seeks to create a duty under Georgia's voluntary undertaking doctrine, that, too, fails because Plaintiff alleges no physical harm, a fundamental requirement under the doctrine.  *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 362 F. Supp. 3d 1295, 1326–27 (N.D. Ga. 2019) (holding that "to the extent that the Plaintiffs assert a duty premised upon the Defendants' voluntarily undertaking such a responsibility, that claim should be dismissed" under Georgia law); *Willingham*, No. 1:12-CV-01157-RWS, 2013 WL 440702, at *18 (N.D. Ga. Feb. 5, 2013) (rejecting duty argument under Georgia law in data breach case because, among other reasons, "[p]laintiffs do not allege that they have suffered physical harm; therefore, they cannot state a negligence claim based on the voluntary undertaking doctrine").

Plaintiff has pleaded no basis for finding that Colonial had any duty to it in tort.  Plaintiff's negligence claims should be dismissed.

## C.   Plaintiff Fails to State a Claim for Federal Declaratory Judgment

Plaintiff seeks a declaratory judgment that Colonial owes it a duty and injunctive relief requiring Colonial to implement certain unenumerated cybersecurity practices.  These requests should be rejected.

First, because the substantive claims in the Complaint fails, Plaintiff's declaratory judgment claim also fails.  *Taylor v. Opteum Fin. Servs., LLC*, No.

1:18-CV-3896-ELR-JKL, 2018 WL 6726056, at *7 (N.D. Ga. Oct. 25, 2018)

(dismissing declaratory judgment claim when substantive claims where dismissed);

*Cooke v. BAC Home Loans Servicing*, LP, No. 1:11-CV-2126-TWT, 2011 WL

4975386 at *2 (N.D. Ga. Oct. 18, 2011) (same); *Giles v. SunTrust Mortg. Inc.*, No.

1:13-CV-2992-RWS, 2014 WL 2779527, at *3 (N.D. Ga. June 19, 2014) (same).

Second, even if the negligence claims survive dismissal, declaratory

judgment would be improperly redundant.  No "actual controversy" exists "when a

plaintiff's request for a declaratory judgment is duplicative of her other claims

asserted in the same action."  *Wilferd v. Digital Equity, LLC*, No. 1:20-CV-01955-

SDG, 2020 WL 6827905, at *12 (N.D. Ga. Nov. 20, 2020) (dismissing redundant

declaratory relief claim).[13]  Here, Plaintiff's negligence and declaratory relief

claims seek the same relief.  The Court will resolve whether Colonial owes a

purported duty to Plaintiff (*see* Compl. ¶ 130 (seeking declaratory judgment on

---

[13] *See also Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n, Inc.*, 942 F.3d 1215, 1252 (11th Cir. 2019) (affirming dismissal of redundant declaratory relief); *Portier v. NEO Tech. Sols.*, No. 3:17-CV-30111-TSH, 2019 WL 7946103, at *29 (D. Mass. Dec. 31, 2019) (D. Mass. Jan. 30, 2020) (dismissing as duplicative declaratory judgment claim); *Patton v. Experian Data Corp.*, No. SACV1701559JVSDFMX, 2018 WL 6190349, at *13 (C.D. Cal. Jan. 23, 2018) (same).

Colonial's purported "duty to Plaintiff")) under Plaintiff's substantive claims. Accordingly, Plaintiff's request for declaratory relief should be dismissed.

Third, the request for injunctive relief fails because (a) Plaintiff does not allege any plausible facts that it will suffer any non-speculative future injury and (b) instead seeks an impermissible determination of past liability.

**Purely speculative future injury** – Plaintiff seeks a declaratory judgment that Colonial owes Plaintiff a duty "to use adequate cybersecurity measures in order to keep the Colonial [p]ipeline secure." Complaint ¶ 130 (emphasis added). But to satisfy the actual controversy requirement under 28 U.S.C. § 2201(a), Plaintiff "must allege specific facts showing 'a substantial and continuing controversy between two adverse parties.'" *Edebiri v. N. Highland Co., LLC*, No. 1:20-CV-04087-SDG, 2020 WL 6564852, at *2 (N.D. Ga. Nov. 9, 2020) (conclusory allegation that he has and will suffer immediate and irreparable harm insufficient).

A remote possibility of future injury is not sufficient to satisfy the actual controversy requirement. *Id.*; *see also In re Brinker Data Incident Litig.*, No. 3:18-CV-686-J-32MCR, 2020 WL 4287270, at *3 (M.D. Fla. July 27, 2020) (rejecting declaratory relief claim when future hacking scenario "is possible, [but] . . . too speculative to confer standing for declaratory and injunctive relief"); *Irwin v.*

*Jimmy John's Franchise, LLC*, 175 F. Supp. 3d 1064, 1074 (C.D. Ill. 2016) (dismissing declaratory relief when plaintiff "claims that she is at future risk of identity theft because other breaches may occur; however, that future risk is conjectural or hypothetical").  Here, Plaintiff includes only a conclusory, speculative allegation of "a danger of ongoing harm."  Compl. ¶ 127.  Plaintiff further speculates that because (1) Plaintiff believes that Colonial's cyber insurance will cover the ransom payment and (2) Colonial may be able to seek a tax deduction on the ransom payment, Colonial "may lack the incentives to take all the steps necessary to prevent similar cyberintrusions in the future."  *Id.* ¶ 129. These allegations fail to assert specific facts—or any facts—of non-speculative future injury and are insufficient.

**Impermissibly seeks redress for past injury** – Plaintiff alleges "a danger of ongoing harm" (Compl. ¶ 127), which signals improper declaratory relief for past injury.[14]  Declaratory relief is appropriate only "when it is necessary to protect the plaintiff from uncertainty and insecurity with regard to the propriety of some *future* act or conduct."  *In re: The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-MD-2583-TWT, 2016 WL 2897520, at *5 (N.D. Ga. May 18,

---

[14] The allegation is implausible, at least as it relates to any conduct of Colonial, because the temporary embargo was lifted more than four months ago.

2016) (rejecting declaratory relief when it dealt only with past harm) (emphasis added and internal quotation marks omitted); *In re Brinker Data Incident Litig.*, 2020 WL 4287270, at *3 (dismissing declaratory and injunctive relief claims when "Plaintiffs' requested prospective relief only seeks to have Brinker 'implement and maintain reasonable [information technology] security measures. . . .' related to 'past alleged harm'").

## V.   **CONCLUSION**

For the reasons above, the Court should dismiss the Complaint with prejudice.

Respectfully submitted this 20th day of September, 2021.

s/ Jason M. Beach
Lawrence J. Bracken II
Georgia Bar No. 073750
lbracken@huntonAK.com
Jason M. Beach
jbeach@huntonAK.com
Georgia Bar No. 043606
HUNTON ANDREWS KURTH LLP
Bank of America Plaza, Suite 4100
600 Peachtree Street, NE
Atlanta, Georgia 30308-2216
Telephone: (404) 888-4000

Neil K. Gilman (pro hac vice)
ngilman@huntonAK.com
Carter C. Simpson (pro hac vice)
csimpson@huntonAK.com
HUNTON ANDREWS KURTH LLP

2200 Pennsylvania Avenue, N.W.
Washington, DC 20037-1701
Telephone: (202) 955 15000

***Attorneys for Defendant,***
***Colonial Pipeline Company***

## **CERTIFICATE OF COMPLIANCE**

The undersigned counsel hereby certifies that this motion was prepared

using one of the font and point selections approved in LR 5.1(B), N.D. Ga.

This 20th day of September, 2021.

s/ Jason M. Beach
Jason M. Beach

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed **MEMORANDUM IN SUPPORT OF DEFENDANT COLONIAL PIPELINE COMPANY'S MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all counsel of record via the Court's CM/EMF filing system to the following email addresses of record:

This 20th day of September, 2021.

s/ Jason M. Beach
Jason M. Beach