**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

**EZ MART 1, LLC,
On Behalf of Itself and All Others
Similarly Situated,**

       **Plaintiff,**

**v.**

**COLONIAL PIPELINE
COMPANY,**

       **Defendant.**

**CIVIL ACTION FILE**

**NO. 1:21-CV-2522-MHC**

## <u>ORDER</u>

This case comes before the Court on Defendant Colonial Pipeline Company

("Colonial")'s Motion to Dismiss [Doc. 24] and Motion to Strike Class Allegations

[Doc. 25].

## I.    BACKGROUND[1]

Colonial operates the Colonial Pipeline, an oil pipeline ("the Pipeline") that

stretches 5,500 miles on the East Coast of the United States and carries over 100

---

[1] Because this case is before the Court on a motion to dismiss, the facts are
presented as alleged in Plaintiff EZ Mart 1, LLC ("EZ Mart")'s Complaint [Doc.
1]. <u>See</u> <u>Silberman v. Miami Dade Transit</u>, 927 F.3d 1123, 1128 (11th Cir. 2019).

million gallons of oil per day between Texas and New York. Compl. ¶¶ 1, 19. On

May 7, 2021, a ransomware attack encrypted certain systems on Colonial's

computer network, which encrypted or "locked" certain data thereon (the

"Ransomware Attack").[2] Id. ¶¶ 2, 27. Later that same day, Colonial paid the

cybercriminals who perpetrated the Ransomware Attack a $4.4 million ransom in

return for a decryption tool that allowed Colonial to retrieve the encrypted or

"locked" data. Id. ¶ 3. As a result of the Ransomware Attack, Colonial shutdown

pipeline operations for five days. Id. ¶¶ 4, 57. EZ Mart alleges that Colonial

"elected to shut down the pipeline in whole or part not because the threat actor had

reached the operational systems, but because Defendant was not sure it could

continue to accurately bill for the product moving through its Pipeline." Id. ¶¶ 24,

45. The shutdown "resulted in fuel shortages in areas that the [Colonial] Pipeline

serviced, affecting more than 11,000 gas stations and causing a sharp increase in

---

[2] EZ Mart alleges that "Colonial's computer system includes voluminous
information related to the intricate web of gas and oil product suppliers and
customers. This information is used by Colonial for billing purposes and the
company possesses voluminous private and sensitive information regarding
suppliers and customers. When the suppliers and customers provide sensitive and
private billing, accounting and financial information to Colonial, they do so under
an expectation that the company will keep the information private and take
reasonable steps to safeguard the information." Compl. ¶ 41.

the price of gasoline for automobiles and other motor vehicles and a sharp decrease in convenience store sales." Id. ¶ 5.

EZ Mart operates a gas station and convenience store that purchases fuel from an oil distributor which "purchases all or some of its petroleum products directly or via one or more intermediaries from Defendant Colonial Pipeline Company." Id. ¶¶ 9-11.  In addition to gasoline, EZ Mart sells food, tobacco products, beer, and soft drinks in its convenience store.  Id. ¶ 10.  The shutdown of the Pipeline was a "calamitous event that jeopardized the business of the Plaintiff." Id. ¶ 25.  Specifically, EZ Mart alleges that it suffered a loss of $7,789.00 in gasoline and in-store customer sales as a result of the shutdown.  Id. at ¶¶ 10, 61-64.

Based on the forgoing facts, Plaintiff filed the above-styled two-count Complaint, asserting claims for (1) negligence and gross negligence (Count I) and (2) declaratory and injunctive relief (Count II).  Compl. ¶¶ 117-30.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  While this pleading standard does not require "detailed factual allegations," the Supreme Court has held that "labels and

3

conclusions" or "a formulaic recitation of the elements of a cause of action will not

do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 555 (2007)).  Under Federal Rule of Civil Procedure

12(b)(6), a claim will be dismissed for failure to state a claim upon which relief

can be granted if it does not plead "enough facts to state a claim to relief that is

plausible on its face." Twombly, 550 U.S. at 570.  The Supreme Court has

explained this standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual content
> that allows the court to draw the reasonable inference that the defendant
> is liable for the misconduct alleged.  The plausibility standard is not
> akin to a "probability requirement," but it asks for more than a sheer
> possibility that a defendant has acted unlawfully.

Ashcroft, 556 U.S. at 678 (internal citation omitted).  Thus, a claim will survive a

motion to dismiss only if the factual allegations in the pleading are "enough to

raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

At the motion to dismiss stage, the court accepts all well-pleaded facts in the

plaintiff's complaint as true, as well as all reasonable inferences drawn from those

facts. McGinley v. Houston, 361 F.3d 1328, 1330 (11th Cir. 2004); see also

Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002).

Not only must the court accept the well-pleaded allegations as true, but these

allegations must also be construed in the light most favorable to the pleader.

4

Powell v. Thomas, 643 F.3d 1300, 1302 (11th Cir. 2011).  However, the court need not accept legal conclusions, nor must it accept as true legal conclusions couched as factual allegations.  Iqbal, 556 U.S. at 678.  Thus, evaluation of a motion to dismiss requires the court to assume the veracity of well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement to relief."  Id. at 679.

## III.   DISCUSSION

Colonial seeks to dismiss EZ Mart's Complaint in its entirety arguing, *inter alia*, that EZ Mart has failed to state a claim for negligence, gross negligence, or declaratory and injunctive relief.  Mem. in Supp. of Def. Colonial Pipeline Company's Mot. to Dismiss ("Def.'s Br.") [Doc. 24-1] at 18-31.  More specifically, Colonial argues that (1) it does not owe any duty to EZ Mart that can support the negligence and gross negligence claims, (2) the economic loss doctrine bars EZ Mart's negligence and gross negligence claims, and (3) EZ Mart's declaratory judgment claim fails because the underlying substantive negligence claims fail.  Id.

### A.   Count I – Negligence and Gross Negligence

To state a claim for negligence under Georgia law, a plaintiff must plead facts sufficient to establish:

> (1) a legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risk of harm, (2) breach of this standard, (3) a legally attributable causal connection between the conduct and resulting injury, and (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty.

Est. of Thornton ex. rel. Thornton v. Unum Life Ins. Co. of Am., 445 F. Supp. 2d 1379, 1382 (N.D. Ga. 2006) (quoting Berry v. Hamilton, 246 Ga. App. 608-09 (2000)).  Additionally, Georgia law defines "gross negligence" as the absence of "slight diligence," which "is that degree of care which every man of common sense, however inattentive he may be, exercises under the same or similar circumstances."  O.C.G.A. § 51-1-4.

Dismissal of Count I is warranted because: (1) the Complaint fails to allege a legally cognizable duty, and (2) the economic loss doctrine applies to bar the negligence and gross negligence claims.

### 1.    The Complaint Fails to Allege A Legally Cognizable Duty.

The existence of an "independent duty created by statute or common law" is an essential element of claims for negligence and gross negligence.  Doty Commc'ns, Inc. v. L.M. Berry & Co., 417 F. Supp. 2d 1355, 1358 (N.D. Ga. 2006); see also Integrated Pest Mgmt. Servs., LLC v. BellSouth Advert. & Pub. Corp., No. 1:04-CV-2880-WSD, 2005 WL 3096131, at *4 (N.D. Ga. Nov. 16, 2005) (holding that a "claim for gross negligence must be based on an alleged

breach of some independent duty created by statute or common law."). "The existence of a legal duty is a question of law for the court." <u>Rasnick v. Krishna Hosp., Inc.</u>, 289 Ga. 565, 567 (2011). "In the absence of a legally cognizable duty, there can be no fault or negligence." <u>Ford Motor Co. v. Reese</u>, 300 Ga. App. 82, 84 (2009) (citation omitted). "A motion to dismiss should be granted when a plaintiff fails to allege any cognizable statutory or common law duty." <u>Heath v. ILG Techs., LLC</u>, No. 1:20-CV-3130-TWT, 2020 WL 6889164, at *10 (N.D. Ga. Nov. 24, 2020) (internal quotations and citations omitted).

In the Complaint, EZ Mart alleges that Colonial owed a duty to EZ Mart to safeguard the continuous uninterrupted operation of the Pipeline, "including protecting it from ransomware attacks, and to safeguard the flow of the product, as a critical resource over which Defendant exercised control." Compl. ¶ 118; <u>see also id.</u> ¶¶ 21 ("Defendant had a duty to adopt reasonable measures to ensure the continued and uninterrupted operation of the Pipeline."), 26 (alleging that Colonial "owed a duty running to Plaintiff and other similarly situated gas station and convenience store owners to take basic steps to secure its electronic systems and protect against cyber-intrusions and data breaches so as to ensure the uninterrupted delivery and distribution of fuel to Plaintiff and Class Members."). Additionally, in response to Colonial's Motion to Dismiss, EZ Mart emphasizes the alleged

"duty to safeguard the release of private electronic information." Pl.'s Resp. to Colonial's Mot. to Dismiss ("Pl.'s Resp. Br.") [Doc. 30] at 27.

As is explained below, under either the theory alleged in the Complaint (duty to ensure uninterrupted operation of the Pipeline) or the theory articulated in Plaintiff's Response Brief (duty to safeguard personal information), EZ Mart has failed to allege the existence of a cognizable statutory or common law duty owed by Colonial to EZ Mart.

### a.    Alleged Duty to Continually Provide Service

Although not mentioned in EZ Mart's brief in response to Colonial's Motion to Dismiss, the Complaint includes allegations that Colonial owed a duty to ensure continuous uninterrupted service of the Pipeline. See, e.g., Compl. ¶¶ 21 ("Defendant had a duty to adopt reasonable measures to ensure the continued and uninterrupted operation of the Pipeline."), 26 ("Defendant owed a duty running to Plaintiff and other similarly situated gas station and convenience store owners to take basic steps to secure its electronic systems and protect against cyber-intrusions and data breaches so as to ensure the uninterrupted delivery and distribution of fuel to Plaintiff and Class Members."), 118 (alleging that Colonial owed a duty to safeguard the Pipeline and "safeguard the Pipeline's critical infrastructure,

8

including protecting it from ransomware attacks, and to safeguard the flow of the product, as a critical resource over which Defendant exercised control.").

"A legal duty sufficient to support liability in negligence is either a duty imposed by a valid statutory enactment of the legislature or a duty imposed by a recognized common law principle declared in the reported decisions of [Georgia's] appellate courts." Sheaffer v. Marriott Int'l, 349 Ga. App. 338, 340 (2019) (citations and punctuation omitted). EZ Mart has failed to cite to any statutory provision that could be construed to impose any legal duty upon Colonial. Since there is no duty imposed by any alleged statutory enactment, a duty can only exist if supported by some common law principle. First Fed. Sav. Bank of Brunswick v. Fretthold, 195 Ga. App. 482, 484 (1990). EZ Mart has also failed to identify any common law principle that would support the proposition that Colonial had a duty to maintain uninterrupted service of the pipeline. Thus, Plaintiff "failed to allege any cognizable statutory or common law duty that [Colonial] allegedly breached." JPMorgan Chase Bank, N. A. v. Durie, 350 Ga. App. 769, 772 (2019) (finding that the trial court erred by denying the motion to dismiss a negligence claim where the plaintiff "failed to allege any cognizable statutory or common law duty"); see also Lincoln v. Fla. Gas Transmission Co. LLC, 608 F. App'x 721, 723 (11th Cir. 2015) (dismissing a negligence claim

9

because the plaintiff failed to allege any facts that gave rise to any duty owed to the plaintiff by Florida Gas Transmission Company).

Taking the facts as alleged in the Complaint as true and accepting all reasonable inferences drawn from those facts, the Court finds that EZ Mart has failed to allege the existence of any cognizable statutory or common law duty owed by Colonial to EZ Mart to ensure continuous uninterrupted service of the pipeline.

### b.  Alleged Duty to Safeguard Consumers' Private Information

EZ Mart contends that courts "have found that the common law duty to safeguard information and electronic systems extends to individuals whose private information is handled or saved by a defendant and is stolen." Pl.'s Resp. Br. at 28. EZ Mart primarily relies on two cases for the proposition that Colonial owed a duty to EZ Mart to safeguard personal information, both of which are distinguishable from the facts of this case: In re: The Home Depot, Inc., Customer Data Sec. Breach Litig., No. 1:14-MD-2583-TWT, 2016 WL 2897520, at *4 (N.D. Ga. May 18, 2016) (denying a motion to dismiss on the ground that the defendant did not have a legal duty to safeguard the plaintiffs' personal information) and In re Arby's Rest. Grp. Inc. Litig., No. 1:17-CV-0514-AT, 2018 WL 2128441, at *5-7 (N.D. Ga. Mar. 5, 2018) (rejecting the retailer defendant's argument that it owed

no common law duty to financial institution and consumer plaintiffs to protect personal credit card data from third party hacking).

A crucial distinguishing factor in both Home Depot and Arby's is that the personal information at issue in those cases which the defendants were alleged to have a duty to safeguard belonged to the plaintiffs.  In this case, it is undisputed that Colonial did not have any of EZ Mart's personal information which necessarily means that EZ Mart did not suffer any harm as a result of its information being compromised.  See Pl.'s Resp. Br. at 29 (admitting that EZ Mart "did not have its private data stolen.").  Additionally, there was a retailer/client relationship between the parties in Home Depot and Arby's which made the recognition of a duty to safeguard personal information belonging to the plaintiff-clients more plausible.  In this case, EZ Mart does not allege that it had any relationship with Colonial, contractual or otherwise.  See Compl. ¶¶ 10-11 (alleging that EZ Mart is a business that consists of a convenience store with two gas pumps and that it purchases fuel from a third-party oil distributor which in turn "upon information and belief purchases all or some of its petroleum products directly or via one or more intermediaries" from Colonial); Pl.'s Resp. Br. at 2 n.1 (admitting that EZ Mart does not have a contract with Colonial), 19 (admitting that EZ Mart is "not a customer" of Colonial), 25-26 (admitting that "Plaintiff is not a

11

purchaser from Colonial," "is not a shipper who deals with Colonial as a carrier," and does not buy any product "directly from either Colonial or any of Colonial's shippers.").

Another crucial distinction between Home Depot and Arby's and this case is that the damage in both of those cases was causally connected to the breach of the alleged duty to safeguard information (*i.e.*, losses related to the theft of personal information such as unauthorized charges on credit cards). Here, EZ Mart alleges, "upon information and belief," that the ransomware attackers stole "customer and billing information," but there is no allegation that any damage resulted from the loss of any personal information, let alone the personal information of EZ Mart. In fact, the Complaint clearly alleges that EZ Mart's damages were not in any way related to any compromised personal information. Instead, the alleged damage in the present case, "including costs and lost profits incurred as a result of a fuel shortage, an increase in the price paid for gasoline, and an inability to sell fuel to their customers," Compl. ¶ 123, was the result of Colonial's decision to shut down the Pipeline, and the decision to shut down the Pipeline is alleged to have been prompted by Colonial's inability to accurately bill for the oil running through the Pipeline. See id. ¶¶ 27 ("As a result of the Ransomware Attack, [Colonial] elected to completely suspend operation of the Pipeline."), 24 ("[Colonial] elected to shut

down the [P]ipeline in whole or part not because the threat actor had reached the operational systems, but because [Colonial] was not sure it could continue to accurately bill for the product moving through its Pipeline."), 45 ("On information and belief, [Colonial] halted operations because its billing system was compromised, and Defendant was concerned that it would be able to determine how much to bill customers for fuel they received."), 25 ("The sudden shutdown of the Pipeline on May 7, 2021 was a sudden and calamitous event that jeopardized the business of the Plaintiff."), 64 (alleging that Plaintiff lost $7,789.00 in sales due to Colonial's decision to shut down the Pipeline), 121 (alleging that EZ Mart "suffered damages including, but not limited to, a fuel shortage, an increase in the price paid for gasoline, and an inability to sell fuel to their customers, also with attendant burden, inconvenience, distress and anxiety.").

Despite failing to identify a legal basis for any duty to safeguard the personal information of entities other than itself, EZ Mart contends that it was a foreseeable victim of the Ransomware Attack, that it suffered harm due to the shutdown of the Pipeline, and that the duty to safeguard the release of private electronic information of other entities should "cover them also." Pl.'s Resp. Br. at 28-29. The Court disagrees. Pretermitting the question of whether Georgia law recognizes a general

duty to safeguard personal information maintained on computer systems,[3] EZ Mart has not alleged facts that would implicate such a duty in this case. See Murray, 798 F. App'x at 492 (questioning the existence of a duty to safeguard personal information under Georgia law and finding "[i]n any case, such a duty would not be implicated in this case, as Appellees are not alleged to have negligently safeguarded any of the Bar Applicants' personal information."). EZ Mart concedes that Colonial did not have any private data belonging to EZ Mart that was stolen.

Taking the facts as alleged in the Complaint as true and accepting all reasonable inferences drawn from those facts, the Court finds that EZ Mart has failed to allege the existence of any cognizable statutory or common law duty owed by Colonial based upon the alleged failure to safeguard personal information belonging to other entities.[4] Because EZ Mart has failed to identify any statutory

---

[3] See Ga. Dept. of Labor v. McConnell, 305 Ga. 812, 815-816 (2019) (holding that the plaintiff failed to show that the state agency owed him a duty, under either Georgia law or common law, to protect his personal information from inadvertent, negligent disclosure where an agency employee inadvertently sent the information to approximately 1000 people); see also Murray v. ILG Techs., LLC, 798 F. App'x 486, 492 (11th Cir. 2020) (recognizing "the Georgia Supreme Court's decision in McConnell, which seriously calls into question the existence under Georgia law of an independent common-law duty to 'safeguard and protect . . . personal information.'") (quoting McConnell, 305 Ga. at 815-16).

[4] Even if EZ Mart had sufficiently alleged a duty to safeguard personal information, EZ Mart's negligence claims based on this theory are fatally flawed for the additional reasons that EZ Mart has failed to allege any damage that was

14

or common law duty owed by Colonial to EZ Mart, Colonial's Motion to Dismiss

EZ Mart's claims for negligence and gross negligence is **GRANTED**.  Heath,

2020 WL 6889164, at *10; Doty Commc'ns, Inc., 417 F. Supp. 2d at 1358.

### 2.     The Economic Loss Rule Bars EZ Mart's Claims for Negligence and Gross Negligence.

Even if EZ Mart adequately alleged a legal duty owed by Colonial, the

economic loss doctrine bars EZ Mart's negligence claim because EZ Mart asserts

only economic injury.  See, e.g., Compl. ¶¶ 7 (alleging that the pipeline shutdown

led to limited fuel sales and reduced profitability), 64 (alleging that "in addition to

the loss of gasoline sales, Plaintiff EZ Mart saw inside sales drop precipitously"

and suffered a $7,789.00 loss in sales), 119 (alleging that the pipeline shutdown

resulted in a "fuel shortage, an increase in the price paid for gasoline, and an

inability [of EZ Mart] to sell fuel and other products to their customers."), 123

("As a result of Defendant's negligence and gross negligence, Plaintiff and the

Nationwide Class suffered damages, including costs and lost profits incurred as a

result of a fuel shortage, an increase in the price paid for gasoline, and an inability

---

caused by any alleged failure to safeguard personal information and has failed to
allege that the harm complained of in this case (*i.e.*, loss of business due to the
pipeline shutdown) was causally connected to the alleged failure to safeguard
personal information.  See Est. of Thornton, 445 F. Supp. 2d at 1382.

to sell fuel to their customers, together with other damages as may be shown at trial.").

In Georgia, "the economic loss rule generally provides that a contracting party who suffers purely economic losses must seek his remedy in contract and not in tort." Hanover Ins. Co. v. Carroll, No. 1:13-CV-01802, 2014 WL 5472520, at *4 (N.D. Ga. Mar. 5, 2014) (citing Gen. Elec. Co. v. Lowe's Home Ctrs., Inc., 279 Ga. 77, 78 (2005)). "A plaintiff can recover in tort only those economic losses resulting from injury to his person or damage to his property." Gen. Elec. Co., 279 Ga. at 78. "Where there is no accident, and no physical damage, and the only loss is a pecuniary one, through loss of value . . . the courts have adhered to the rule that purely economic interests are not entitled to protection against mere negligence, and so have denied recovery." Flintkote Co. v. Dravo Corp., 678 F.2d 942, 946 (11th Cir. 1982) (collecting Georgia cases).

"Although it originated in cases involving products liability, the economic loss rule has been expanded to bar recovery in all negligence-based tort actions where a plaintiff seeks to recover purely economic losses, regardless of contractual privity." Johnson v. 3M, No. 4:20-CV-8-AT, 2021 WL 4745421, at *30 (N.D. Ga. Sept. 20, 2021) (citations and quotations omitted). "[I]n all negligence-based tort actions where a plaintiff seeks to recover purely economic losses—regardless of

contractual privity—the economic loss rule precludes recovery in the absence of a

duty imposed by law, an accident, or misrepresentation." Murray v ILG Techs.,

LLC, 378 F. Supp. 3d 1244, 1244 (S.D. Ga. 2019), aff'd, 798 F. App'x 486 (11th

Cir. 2020).

> Despite this growth in applicability, there are instances where the economic loss rule does not apply.  First, the rule does not bar recovery of purely economic losses in tort actions where the defendant breaches a duty imposed by law or arising from a special relationship. See Unified Servs., Inc. v. Home Ins. Co., 218 Ga. App. 85 (1995) (tort actions permitted where conduct "breaches a duty imposed by law."); Bulmer v. S. Bell Tel. & Tel. Co., 170 Ga. App. 659 (1984) ("Absent a special relationship, no action for breach of a duty arising from a contract exists independent of the contract."); In re Arby's Rest. Grp. Inc. Litig., No. 1:17-CV-0514-AT, 2018 WL 2128441, at *12 (N.D. Ga. Mar. 5, 2018) ("The independent duty exception to the economic loss rule applies in cases where the plaintiff identified a statutory or common law duty that would have applied regardless of the existence of an underlying contract."); Hanover Ins. Co. v. Hermosa Const. Grp., LLC, 57 F. Supp. 3d 1389, 1396 (N.D. Ga. 2014) ("independent duty" exception to the economic loss rule "has been applied in cases where the plaintiff identified a statutory or common law duty that would have existed absent the underlying contract.").  Relationships that will give rise to such a "legal duty" include an attorney and client, physician and patient, carrier and passenger, or a principal and agent. Bulmer, 170 Ga. App. at 660. Negligence actions involving such special relationship, regardless of contractual duties, are generally allowed because the law imposes an independent duty of care. Id.

Id. at 1243-44.

EZ Mart argues that the existence of an independent, non-contractual duty

bars the application of the economic loss doctrine. Pl.'s Resp. Br. at 31-34 (citing,

*inter alia*, <u>Home Depot</u> and <u>Arby's</u>).  However, as discussed in the previous

Section, EZ Mart has failed to identify any independent statutory or common law

duty owed by Colonial to EZ Mart.  Accordingly, the independent duty exception

to the economic loss doctrine is inapplicable.  Moreover, as admitted by EZ Mart,

there is no relationship between EZ mart and Colonial such that the "special

relationship" exception would preclude the application of the economic loss

doctrine.

Accordingly, even if EZ Mart established a legal duty owed by Colonial to

it, which it has not, the economic loss doctrine would bar its negligence claims.

### B.    Count II – Declaratory Judgment

In response to Colonial's Motion to Dismiss, EZ Mart withdraws its claim

for declaratory and injunctive relief.  Pl.'s Resp. Br. at 34.  Accordingly, the Court

will treat this claim as withdrawn, so Colonial's Motion to Dismiss EZ Mart's

claim for declaratory and injunctive relief is **DENIED AS MOOT**.

## IV.    CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Colonial Pipeline

Company's Motion to Dismiss [Doc. 24] is **GRANTED IN PART AND**

**DENIED IN PART**.  The Motion to Dismiss is **GRANTED** as to Count I

(Negligence and Gross Negligence) and **DENIED AS MOOT** as to Count II

(Declaratory and Injunctive Relief), which claim was withdrawn. Plaintiff's Class

Action Complaint [Doc. 1] is **DISMISSED**. It is further **ORDERED** that Colonial

Pipeline Company's Motion to Strike Class Allegations [Doc. 25] is **DENIED AS**

**MOOT**.

The Clerk is **DIRECTED** to **CLOSE** this case.

**IT IS SO ORDERED** this 8th day of July, 2022.

MARK H. COHEN
United States District Judge